**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| DITECH FINANCIAL LLC | Case No. 2:16-cv-02434-RFB-DJA |
| Plaintiff, | **ORDER** |
| v. | |
| T-SHACK, INC.; WESTTROP ASSOCIATION | |
| Defendant. | |

## I. INTRODUCTION

Before the Court are Plaintiff Ditech Financial LLC's ("Ditech") Motions for Summary Judgment. ECF Nos. 56, 65. For the following reasons, the Court grants Plaintiff's Motion for Summary Judgment under 12 U.S.C. § 4617(j)(3) and denies the other motion as moot.

## II. PROCEDURAL BACKGROUND

Plaintiff Ditech Financial LLC ("Ditech") sued Defendant T-Shack Inc., ("T-Shack") on October 19, 2016. ECF No. 1. Ditech seeks declaratory relief that a nonjudicial foreclosure sale conducted in 2013 under Chapter 116 of the Nevada Revised Statutes ("NRS") did not extinguish the Federal National Mortgage Association's ("Fannie Mae") interest in a Las Vegas property. Id. To obtain the relief, Ditech asserts claims for quiet title and declaratory relief under 12 U.S.C. § 4617(j)(3 ), due process violations, and wrongful foreclosure. Id. T-Shack answered the complaint on November 9, 2016. ECF No. 12. Defendant West Trop Association, Inc. (the

"HOA") answered the complaint on December 23, 2016 and asserted a third-party complaint against Nevada Association Services, LLC ("NAS"). ECF No. 15. Ditech moved for summary judgment on January 30, 2017. ECF No. 25. On March 22, 2018, the Court denied the motion for summary judgment without prejudice to refiling and stayed the case pending the Nevada Supreme Court's answer to a pertinent certified question. ECF No. 47. On April 10, 2019, the Court lifted the stay. ECF No. 53. Ditech again moved for summary judgment on May 17, 2019. ECF No. 56. The motion was fully briefed. ECF Nos. 64, 69. Ditech filed a second motion for summary judgment on the issue of tender. ECF No. 65. This motion was also fully briefed.

### III. FACTUAL BACKGROUND

The Court makes the following findings of undisputed and disputed facts.[1]

#### a. Undisputed facts

This matter concerns a nonjudicial foreclosure on a property located at 5155 W. Tropicana Avenue, Unit 2042, Las Vegas, Nevada 89103 (the "property"). The property sits in a community governed by the WestTrop Association, Inc (the "HOA"). The HOA requires its community members to pay HOA dues.

Nonparty Barry A. Leydecker Jr. borrowed funds from Countrywide Home Loans Inc. to purchase the property in 2007. To obtain the loan, Leydecker Jr. executed a promissory note and a corresponding deed of trust to secure repayment of the note. The deed of trust, which lists Leydecker Jr. as the borrower, Security National Mortgage Company as the lender, and Mortgage Electronic Registration Systems, Inc., ("MERS") as the beneficiary, was recorded on January 12, 2007. On November 2, 2011, MERS recorded an assignment of the Deed of Trust to Bank of

---

[1] The Court takes judicial notice of the publicly recorded documents related to the deed of trust and the foreclosure as well as Fannie Mae's Single-Family Servicing Guide. Fed. R. Evid. 201 (b), (d); Berezovsky v. Moniz, 869 F.3d 923, 932–33 (9th Cir. 2017) (judicially noticing the substantially similar Freddie Mac Guide); Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (permitting judicial notice of undisputed matters of public record).

- 2 -

America, N.A., successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP ("BANA"). On September 6, 2013, BANA recorded an assignment of the deed of trust to EverBank. EverBank recorded an assignment of the deed of trust to Ditech on December 8, 2014.

Leydecker Jr. fell behind on HOA payments. From April 2010 through August 2013, the HOA, through its agent, recorded a notice of delinquent assessment lien, followed by a notice of default and election to sell and then a notice of foreclosure sale. On November 1, 2013, the HOA held a foreclosure sale on the property under NRS Chapter 116. T-Shack bought the property. For $6151.00

However, Federal National Mortgage Association ("Fannie Mae") previously purchased the note and the deed of trust in January 2007. While its interest was never recorded under its name, Fannie Mae continued to maintain its ownership of the note and the deed of trust at the time of the foreclosure. TIAA, FSB serviced the note on behalf of Fannie Mae, at the time of the foreclosure. Ditech became the sub-servicer on or about April 30, 2014.

The relationship between Fannie Mae and its servicers, is governed by Fannie Mae's Single-Family Servicing Guide ("the Guide"). The Guide provides that servicers may act as record beneficiaries for deeds of trust owned by Fannie Mae. It also requires that servicers assign the deeds of trust to Fannie Mae on Fannie Mae's demand. The Guide states:

> The servicer ordinarily appears in the land records as the mortgagee to facilitate performance of the servicer's contractual responsibilities, including (but not limited to) the receipt of legal notices that may impact Fannie Mae's lien, such as notices of foreclosure, tax, and other liens. However, Fannie Mae may take any and all action with respect to the mortgage loan it deems necessary to protect its ... ownership of the mortgage loan, including recordation of a mortgage assignment, or its legal equivalent, from the servicer to Fannie Mae or its designee. In the event that Fannie Mae determines it necessary to record such an instrument, the servicer must assist Fannie Mae by [ ] preparing and recording any required documentation, such as mortgage assignments, powers of attorney, or affidavits; and [by] providing recordation information for the affected mortgage loans.

The Guide also allows for a temporary transfer of possession of the note when necessary for servicing activities, including "whenever the servicer, acting in its own name, represents the interests of Fannie Mae in ... legal proceedings." The temporary transfer is automatic and occurs at the commencement of the servicer's representation of Fannie Mae. The Guide also includes a chapter regarding how servicers should manage litigation on behalf of Fannie Mae. But the Guide clarifies that "Fannie Mae is at all times the owner of the mortgage note[.]" Finally, under the Guide, the servicer must "maintain in the individual mortgage loan file all documents and system records that preserve Fannie Mae's ownership interest in the mortgage loan."

Finally, the Guide "permits the servicer that has Fannie Mae's [limited power of attorney] to execute certain types of legal documents on Fannie Mae's behalf." The legal documents include full or partial releases or discharges of a mortgage; requests to a trustee for a full or partial reconveyance or discharge of a deed of trust, modification or extensions of a mortgage or deed of trust; subordination of the lien of a mortgage or deed of trust, conveyances of a property to certain entities; and assignments or endorsements of mortgages, deeds of trust, or promissory notes to certain entities.

In 2008, Congress passed the Housing and Economic Recovery Act ("HERA"), 12 U.S.C. § 4511 *et seq.*, which established the Federal Housing Finance Agency ("FHFA"). HERA gave FHFA the authority to oversee the government-sponsored enterprises Fannie Mae and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, the "Enterprises"). In accordance with its authority, FHFA placed the Enterprises, including Fannie Mae, under its conservatorship in 2008. Neither FHFA nor Fannie Mae consented to the foreclosure extinguishing Fannie Mae's interest in the property in this matter.

### b. Disputed Facts

The parties dispute whether Fannie Mae acquired an interest in the property under Nevada law.

### IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

### V. DISCUSSION

The Federal Foreclosure Bar, 46 U.S.C. § 4617(j)(3) resolves this matter.[2] The Ninth Circuit has held that the Federal Foreclosure Bar preempts foreclosures conducted under NRS Chapter 116 from extinguishing a federal enterprise's property interest while the enterprise is under FHFA's conservatorship unless FHFA affirmatively consented to the extinguishment of the interest. Berezovksy, 869 F.3d at 927–31. Under Berezovksy, summary judgment based on the Federal Foreclosure Bar is warranted if the evidence establishes that the enterprise had an interest

---

[2] Because the Court finds that the Federal Foreclosure Bar is dispositive of this matter, the Court does not address or consider Plaintiff's arguments regarding tender.

in the property at the time of the HOA foreclosure sale. Id. at 932– 33. The Court finds that the evidence establishes that Fannie Mae had an interest in the property at the time of the HOA foreclosure sale.

T-Shack argues that summary judgment is not warranted because Ditech and Fannie Mae provided no written documents satisfying the Nevada statute of frauds to demonstrate ownership of the deed of trust. T-Shack also attempts to distinguish this case from Berezovsky and cases of its ilk by arguing that MERS assigned all of Fannie Mae's purported interest in the deed of trust to Bank of America. T-Shack further argues that because there is no evidence that FHFA affirmatively consented to the sale, FHFA must have consented to the sale. Finally, T-Shack argues that Nevada law defines property of the FHFA under 12 U.S.C. § 4617(j)(3).

The Court finds that none of these arguments have merit. In Daisy Trust v. Wells Fargo Bank, N.A., the Nevada Supreme Court upheld the application of the Federal Foreclosure Bar in a case substantially similar to this one, holding that it was not necessary for the deed of trust beneficiary to produce the loan servicing agreement or the original promissory note to establish that the enterprise was the owner of the loan at the time of the foreclosure sale. 445 P.3d 846, 849 (Nev. 2019). The Nevada Supreme Court also specifically considered and rejected the argument that the recordation statutes of NRS 106.210 or NRS 111.325 applied, and found that internal documents and printouts from the enterprise's internal database were sufficient to show a principal-agency relationship between the record deed of trust beneficiary and the government sponsored enterprise. Id. at 848 – 50.

Here, as in Daisy Trust, Plaintiffs attach printouts from Fannie Mae's Servicer and Investor Reporting ("SIR") electronic database. The printouts are accompanied by a declaration of Graham Babin, an employee of Fannie Mae. Babin translates the printouts and identifies the Guide. He

also specifically identifies the portions of the printouts that detail the date that Fannie Mae acquired the note and the deed of trust and that recount the servicing history of the loan. The Court finds this evidence sufficient to support the fact that there was a principal agency relationship between Fannie Mae and the record beneficiary of the deed of trust, such that Fannie Mae owned the loan on the date of foreclosure sale.

The Court also finds that there is no evidence in the record that FHFA affirmatively consented to the sale. The Ninth Circuit is clear in its construing of 12 U.S.C. § 4617j(3) that it does not provide for implied consent to foreclosure sales. <u>Berezovsky</u>, 869 F.3d at 929. Without evidence of affirmative consent, the Court will not find that FHFA consented to the sale.

Finally, the Court rejects T-Shack's argument that Nevada law determines whether property is covered by the FHFA. It is irrelevant that HERA does not define "property" under the FHFA. Both the Ninth Circuit and the Nevada Supreme Court, in upholding the applicability of the Federal Foreclosure Bar, have found that the property of the FHFA includes the assets of those under its conservatorship such as Fannie Mae. <u>See</u> <u>Berezovsky</u>, 869 F.3d at 927 – 30; <u>Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC</u>, 396 P.3d 754, 757 (Nev. 2017); <u>Saticoy Bay LLC Series 9641 Christine View v. Fed. Nat'l Mortg. Ass'n,</u> 417 P.3d 363, 366 (Nev. 2018).

Based on the foregoing, the Court grants summary judgment in favor of Plaintiff and declares that the Federal Foreclosure Bar prevented the foreclosure sale from extinguishing Fannie Mae's interest in the property. The Court finds this holding to be decisive as to all claims in this matter and dismisses the remaining claims as a result.

### VI. CONCLUSION

**IT IS ORDERED** that Plaintiff Ditech Financial LLC's Motion for Summary Judgment (ECF No. 56) is granted. The Court declares that T-Shack acquired the property subject to Fannie

Mae's deed of trust that is serviced by Ditech Financial LLC.  The Clerk of the Court is instructed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff Ditech Financial LLC's Motion for Partial Summary Judgment (ECF No. 65) is DENIED as moot.

**IT IS FURTHER ORDERED** that the lis pendens filed in this case is expunged. (ECF No. 6).

The Clerk of Court is instructed to enter judgment accordingly and close this case.

DATED: March 31, 2020

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**